UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OSCAR MERLIN LOPEZ,

      Petitioner,

v.                                                    Case No. 3:26-cv-94-MMH-PDB

SCOTTY RHODEN, et al.,

      Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner Oscar Merlin Lopez, an immigration detainee, initiated this action through counsel by filing a Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (Doc. 1; Petition) on January 16, 2026. Petitioner supplemented the Petition with a verification on January 23, 2026 (Doc. 7). The Federal Respondents (Garrett Ripa, Todd Lyons, Markwayne Mullin, and Pamela Bondi[1]) filed a Response to Petition for Writ of Habeas Corpus (Doc. 12; Response). Lopez filed a counseled Reply (Doc. 13; Reply). This case is ripe for review.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Markwayne Mullin and Todd Blanche are automatically substituted for Kristi Noem and Pamela Bondi, respectively.

## II. Lopez's Petition

Lopez, a citizen of Mexico, entered the United States without inspection in 2021. Petition at 9. On October 29, 2025, Lopez was arrested by local law enforcement for a civil traffic infraction and subsequently transferred into the custody of the U.S. Immigration and Customs Enforcement (ICE). Id. at 11. The following day, October 30, 2025, ICE served Lopez with a notice to appear, charging him with being "an alien present in the United States who has not been admitted or paroled" and "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act." Id. at 11-12. Lopez is currently in removal proceedings. Id. at 12.

In his Petition, Lopez raises various claims under the Immigration and Nationality Act, the Administrative Procedure Act, and the Fifth Amendment Due Process Clause. See id. at 28-39. However, the crux of Lopez's claims is that he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is entitled to a bond hearing. See id. As relief, Lopez asks the Court, inter alia, to direct his immediate release from detention. Id. at 40.

## III. Analysis

The Court first addresses the Federal Respondents' arguments that two statutory provisions—8 U.S.C. § 1252(g) and § 1252(b)(9)—deprive this Court of jurisdiction to adjudicate Lopez's claims and that Lopez failed to exhaust his

administrative remedies prior to filing this case. See Response at 8. Because the Court rejects those arguments, the Court then addresses the merits of Lopez's claims and fashions an appropriate remedy.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Lopez is not attacking ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal. Instead, Lopez is attacking ICE's decision to treat him as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Lopez's claims.

### b. 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 19 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Lopez does not have a final order of removal. Nor is he seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, he is challenging his classification under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of his claims.

### c. Exhaustion

A petitioner need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." In re Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Indeed, the immigration judge denied Lopez's request for a custody redetermination, finding that he lacked authority to hear the request for a bond based on the BIA's Hurtado decision. Doc. 12-5. Requiring Lopez to appeal that decision to the BIA or make any further administrative request for a bond hearing would be futile. District courts around the country, including some judges on this Court, have reached this same conclusion and declined to

dismiss similar cases based on the alleged failure to exhaust. See, e.g., Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1, 2025)[2] (collecting cases); see also Mohammed v. Olson, No. 1:25-CV-02404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025) (rejecting the respondents' argument that the petitioner must exhaust his administrative remedies by requesting a bond hearing; reasoning that "[b]ecause [the p]etitioner entered the country without inspection, if he were to move for a bond hearing, an [immigration judge] would have to decline jurisdiction over the issue" based on binding BIA precedent). Considering the circumstances, the Court rejects the Federal Respondents' exhaustion argument.

### d. Merits

The underlying premise of Lopez's claims is that he should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). The Court examines each of these statutes in turn.

Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted"

---

[2] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission" (internal quotation marks and citation omitted)). The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 287, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. § 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain the arrested alien" or "may release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)(2)

7

(emphasis added). The Supreme Court has recognized that this section "applies to aliens already present in the United States." Jennings, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this dichotomy." Lopez v. Hardin, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) (quoting Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24, 2025)). On July 8, 2025, however, the government changed course when the DHS issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025). The BIA adopted and applied this policy in Hurtado, 29 I. & N. Dec. 216. But district courts around the country have largely rejected the government's new interpretation of these regulations. See, e.g., Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL

8

3558138, at *3 (M.D. Fla. Dec. 12, 2025); Robles v. U.S. Dep't of Homeland Security, No. 1:25-CV-1578, 2025 WL 3558128, at *6 & n.3 (W.D. Mich. Dec. 12, 2025); Martinez-Martinez v. Noem, No. 25CV2975-GPC(VET), 2025 WL 3552746, at *6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); Belsai D.S. v. Bondi, - - - F. Supp. 3d - - -, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by [the r]espondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection."); Pizarro Reyes, 2025 WL 2609425, at *7 (collecting cases). But see Lopez v. Dir. of Enf't & Removal Operations, - - - F. Supp. 3d - - -, 2026 WL 261938, at *8 (M.D. Fla. Jan. 26, 2026) (disagreeing with the statutory interpretation that noncitizens seeking admission form "a distinct and narrower class than applicants for admission"); Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of 'applicant[s] for admission'"); Vargas Lopez v. Trump, 802 F. Supp. 3d 1132, 1142 (D. Neb. 2025) (finding that "just because [the petitioner]

illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)").

Until recently, appellate courts had yet to weigh in on the issue. On February 6, 2026, the Fifth Circuit Court of Appeals issued a published, but not unanimous, opinion reaching the opposite conclusion. See Buenrostro-Mendez v. Bondi, 166 F.4th 494, 498 (5th Cir. 2026). The majority concluded that an alien without lawful admission who has been present in the United States for a period of time is subject to mandatory detention under § 1225(b)(2).[3] See id. That decision is not binding here. And while the Court respects the reasoned decision of the majority, the dissenting opinion is more persuasive. As such, the Court adopts the reasoning of the Buenrostro-Mendez dissent in full. See id. at 508–21 (Douglas, J., dissenting). For these reasons, the Court rejects the Federal Respondents' arguments that Lopez is subject to mandatory detention under § 1225(b)(2).

---

[3] In a published, non-unanimous opinion the Eight Circuit Court of Appeals reached the same conclusion as the Fifth Circuit. See Avila v. Bondi, - - - F.4th - - -, 2026 WL 819258, at *6 (8th Cir. Mar. 25, 2026). Notably, a circuit split is likely on this issue. In ruling on a motion to stay pending appeal, the Seventh Circuit preliminarily determined that DHS was not likely to prevail on its argument that "§ 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1062 (7th Cir. 2025). The issue is also before the Eleventh Circuit. See Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065 (11th Cir.) (oral argument held Mar. 26, 2026).

It is undisputed that Lopez entered the United States without inspection and has been residing here for years. <u>See</u> Response at 2-3. Thus, he is not properly detained under § 1225(b)(2) as the Federal Respondents contend. Upon review, the Court finds that Lopez's detention is governed by § 1226, and the Petition is due to be granted.

### d. Remedy

Next, the Court must consider the appropriate remedy: immediate release from detention or a bond hearing. The Federal Respondents argue that if the Court determines Lopez's detention is subject to § 1226, "the only appropriate remedy is to begin the process for a bond hearing—not outright release." Response at 8. At the same time, the Federal Respondents assert that "[o]nly [the Executive Office of Immigration Review] can provide a bond hearing. That said, if ordered, ICE would do what is in its power to facilitate a hearing." <u>Id.</u>

The Court is not persuaded by the Federal Respondents' contention that an order directing a bond hearing would be the appropriate relief. First, the Federal Respondents had ample opportunity to argue that Lopez is or would be subject to detention under § 1226, but they failed to do so. Without any lawful basis for his detention at this time, the Court can only find that Lopez is entitled to immediate release. <u>See, e.g.</u>, <u>Rivero v. Mina</u>, - - - F. Supp. 3d - - -,

2026 WL 199319, at *4 (M.D. Fla. Jan. 26, 2026); Bethancourt Soto v. Soto, 807 F. Supp. 3d 397, 410 (D.N.J. 2025).

Second, the Federal Respondents' representation that they will attempt to "facilitate" a bond hearing is, simply, not good enough. This is particularly true where an immigration judge is likely to refuse to conduct a bond hearing, citing Hurtado, 29 I. & N. Dec. 216. In the event that occurs, Lopez would receive no relief at all, and the writ of habeas corpus issued in this case would be rendered entirely meaningless. Therefore, the Court finds the most appropriate relief is release from detention.

Accordingly, it is

**ORDERED**:

1.      Lopez's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**. Respondents shall release Lopez **within 24 hours of this Order**, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

2.      The **Clerk** is directed to terminate any motions, enter judgment granting the Petition, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of April, 2026.

MARCIA MORALES HOWARD
United States District Judge

12

JAX-3 4/6
c:
Counsel of Record